**In re WELCH RATHOLE SERVICE, a partnership, Debtor.**

**WELCH RATHOLE SERVICE, a partnership, Plaintiff,**

v.

**CONSTRUCTION CONSULTING LABORATORY, INC., d/b/a Stata-Dyne, Inc., a Texas corporation, Defendant.**

**Bankruptcy No. 82–05616.
Adv. No. 83–7084.**

United States Bankruptcy Court,
D. North Dakota.

Nov. 15, 1983.

Ross H. Espeseth, of Rosenberg, Evans, Moench & Baird, Bismarck, N.D., for plaintiff/debtor.

Jack McDonald, Jr., of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, P.C., Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

On February 22, 1983, the Debtor brought the instant adversary action seeking the turnover to the estate of a mobile oil drilling rig which the Defendant/dealer had allegedly repossessed after the bankruptcy petition had been filed. Recovery is sought pursuant to 11 U.S.C. § 542(a) and, in addition, the Plaintiff seeks damages occasioned by its loss of use. The Defendant in its answer admitted that it repossessed the rig but that such repossession was made in good faith without knowledge of the bankruptcy filing.

A trial was held on October 18, 1983.

The issues presented are whether the drilling rig is property of the estate and subject to turnover and whether the Debtor is entitled to damages.

1.

The facts as established at trial are as follows:

On December 12, 1980, the Plaintiff/Debtor purchased from the Defendant a mobile drilling rig mounted on a 1977 Ford truck model LN9000 for a total price of $210,000.00. By its terms, the Debtor paid $40,000.00 down with the $170,000.00 balance to be paid over the ensuing three years at a rate of $5,000.00 per month commencing January 15, 1981. The Debtor signed a promissory note for the balance and extended to the Defendant a security interest in the subject rig which security interest was duly recorded by means of a financing statement. The Plaintiffs fell behind in the monthly payments in July, 1982, and no payment has been made since Au-

gust, 1982. The present arrearage is $75,-000.00, and the pay-off balance is $97,-337.29.

The Plaintiffs continued to use the rig during the summer and fall despite their financial problems. The Defendant was aware of the Plaintiff's financial difficulty and during this period, Ken Parr had conversations with Mike Welch concerning the past due payments and the possibility of repossession if payments were not forthcoming. The Defendant also periodically checked with the Clerk of Bankruptcy Court in Fargo to determine whether the Debtor had filed a petition. Up until November 5, 1982, no petition had been filed. The rig was regularly kept in a metal quonset situated on the Welch property near Dickinson, North Dakota. Jack Stevens, the president of the Defendant company, testified that he made the decision to repossess the rig and flew into Bismarck, North Dakota, on November 3, 1982, where he rented a truck and on the same date drove to Dickinson, North Dakota. The next morning, November 4, 1982, he and Ken Parr drove out to the Welch place and watched the area all day. The next day, November 5, was a Friday and again they went out to observe the Welch yard. Through binoculars, they saw the rig being taken out of the quonset. Later that afternoon, Mr. Stevens saw the rig being put back in the quonset and noticed another individual other than Mike Welch going in and out of the building. This other person, according to Mike Welch, was Danny Moch who also had a key to the padlock. At 5:30 p.m. on November 5, Stevens and Parr went to the quonset and saw the door open about 1″. He checked the rig and found the keys were in it. He then drove it out of the quonset and back to Texas, the company's home base. Welch testified the door had a scratch on it, and it had the appearance of a forceable entry; however, he admitted another person had a key and could have gone back in. The Plaintiff testified that at the time the rig was taken he had to turn down four drilling jobs but on cross-examination admitted that in fact he was referring to opportunities to bid rather than actual jobs.

He further testified that the oil field business became very competitive during this time making it difficult to estimate what his net profit from these jobs would have been. Things became apparently so difficult in North Dakota that the Plaintiff moved his operation to Texas in March of 1983 where he continues to operate. He estimated he lost three jobs in Texas at a net profit of $750.00 each and also felt he could have doubled the accounts receivable if he had had this rig available for use.

On November 5, 1982, the Plaintiff filed under Chapter 11 of the Bankruptcy Code. Stevens testified that he did check with the Clerk's office on November 4, the day preceeding, but apparently, because he spent all day at the Welch site, did not make a check on November 5.

2.

There is no question but that at the time of the repossession during the early evening of November 5, the rig was in the possession of the Debtor. The Defendant takes the position that the rig was being purchased under the terms of an executory contract which, according to § 365 of the Code, requires the trustee to either accept or reject and if he is to accept must provide adequate assurance. This argument will not be considered since the issue of adequate assurance is not properly before the Court. The Defendant did not in its answer allege the lack of adequate protection and even if it had, it would have the burden of establishing the extent of the Plaintiff's equity or lack thereof. See § 362(g)(1). Although the Defendant in its brief questions whether the Plaintiff has any equity, there was no evidence of Fair Market Value introduced at trial. The only evidence on this issue is the amount set forth in the Plaintiff's schedules which placed it at $160,000.00. The question of adequate protection is not properly before the Court.

The Defendant asserts that its repossession was made on the basis of its security interest and without notice of the bankruptcy filing. Irrespective of whether or not the Defendant had actual notice, it

strongly suspected that a filing was imminent. The lack of notice in any event is applicable only in situations where there has been a good faith transfer without notice of the debtor's property by an entity to another. This is not the situation before the Court. Here, the Defendant knew the Plaintiff was in serious financial difficulty, knew payments had not been made on the purchase contract for sometime and strongly suspected that the Plaintiff was going to file in bankruptcy.

The Court believes that section 542(a) is wholly determinative of the issue regarding the parties' interests in the drilling rig. The language of the statute is absolute and mandates an immediate turnover unless the property is of inconsequential value and benefit to the estate. While an important factor in some instances, the manner of repossession is irrelevant where as here it was perfected after the Debtor filed his petition. The critical factor is that the rig was "property of the estate" as defined by § 541. This section is all inclusive and includes the rig in question. Under section 542(a), an entity in possession, custody or control of property of the estate *shall* deliver said property or its value to the trustee unless of inconsequential value or benefit. From the testimony, it appears the Plaintiff could utilize the rig in his operation and, hence, it is of value and benefit.

As to the second issue of damages, the Court is of the opinion that whatever loss of income or business may have been incurred by the Plaintiff, it is too speculative. Hence, no damages will be awarded.

IT IS, THEREFORE, ORDERED that the Defendant shall turn over to the Plaintiff/Debtor the mobile drilling rig as described in the Plaintiff's complaint. The property remains subject to the Defendant's security interest.

IT IS FURTHER ORDERED that the prevailing party shall prepare and submit a judgment in conformity herewith.